SHEPHERD, FRANK, Associate Judge.
Christos Stasinos, a Florida licensed general contractor, appeals a final order of the Florida Department of Professional Regulation, Construction Industry Licensing Board, awarding a $50,000 restitution payment to Anthony and Danielle Guzzetta on their claim against the Florida Homeowners’ Construction Recovery Fund for Stasinos’ abandonment of his residential construction contract with the Guzzettas. Stasinos’ interest in the matter arises out of the fact that payment of the claim will result in an automatic suspension of his contracting license. See § 489.143(8), Fla. Stat. (2015).
Stasinos raises two challenges to the order of the Construction Industry Licensing Board: (1) the Board did not have jurisdiction to enter the order under review; (2) if it did have jurisdiction to enter the order, the claimants’ claim is nevertheless time-barred. Finding no merit to either challenge, we affirm the order of the Board.
*20 Procedural and Factual Background
The essential facts and procedural history of this case may be summarized as follows:
August 2005: Anthony and Danielle Guz-zetta entered into a contract with Andover Construction, Inc., to construct a new residence in Delray Beach, Florida. The final contract price for the project was $1,040,713.00. Christos Stasinos was the general contractor and qualifying agent[1] for Andover Construction.
February 20, 2007: The Guzettas and And-over Construction entered into a letter agreement to resolve disputes concerning the work performed on the project. And-over Construction agreed to perform certain jobs to complete the project and to obtain a Certifícate of Occupancy (“CO”) by March 31, 2007 (or pay a $300 per day late fee for additional time to obtain the CO).
April 20, 2007: Andover Construction obtained the CO, but did not complete the work outlined in the letter agreement.
January 3, 2008: The Guzzettas sued Andover in the Palm Beach County Circuit Court to recover the additional expense incurred to complete the project and the late fee.
August 14, 2008: Andover countered with a bankruptcy filing in the United States Bankruptcy Court for the Southern District of Florida, staying the circuit court case.
June 26, 2009: The Bankruptcy Court granted the Guzzettas relief from the stay. Two and one-half weeks later, on July 14, 2009, the Bankruptcy Court ordered that the Guzzettas’ claim against Andover be allowed as a general unsecured claim in the amount of $32,000.
July 29, 2010: The Palm Beach County Circuit Court entered a final judgment against Andover in the sum of $73,923.69.
December 15, 2011: The Bankruptcy Court discharged Andover’s bankruptcy claim, concluding the case. The Guzzettas received nothing on their claim.
July 31, 2012: The Guzzettas filed a claim against the Florida Homeowners’ Construction Recovery Fund for recompense as a result of Andover’s abandonment of its construction contract.
January 14, 2014: The Construction Industry Licensing Board met to consider the Guzzettas’ claim. Stasinos was present and represented by counsel. The Guz-zettas were not present or represented by counsel. The Board denied the Guzzettas’ claim as untimely filed.
February 10, 2015: The Construction Industry Licensing Board rendered its decision by written final order.
March 12, 2015: The Guzzettas filed a Notice of Administrative Appeal of the written final order on the last day for filing with the Construction Industry Licensing Board. On the same day, the Guzzettas asked the Board to reconsider the written final order on the ground that they did not receive notice of the hearing.
March 18, 2015: The Guzzettas and the Board filed an Agreed Motion to Relinquish Jurisdiction to the Board for the purpose of reconsidering the final order. Stasinos was served with a copy of the motion and did not object.
March 27, 2015: This court granted the motion and relinquished jurisdiction to the Board for a period of sixty days for the *21 purpose of reconsidering the written final order.
May 13, 2015: With all parties and counsel present, the Board vacated its prior order, finding the Guzzettas’ claim to be timely filed, and awarded the Guzzettas $50,000 from the Recovery Fund.
May 14, 2015: The Guzzettas filed a Notice of Voluntary Dismissal Without Prejudice of their appeal pending before this court.
June 8, 2015: The Board rendered its written Order Vacating Prior Final Order and Granting Reconsideration.
June 29, 2015: Stasinos filed a Notice of Administrative Appeal of this order.
Standard of Review
Section 120.68, Florida Statutes, governs appellate review of final administrative agency action under the Florida Administrative Procedure Act. The inquiry on appeal is generally whether the final order is supported by competent, substantial evidence in the record. § 120.68(7)(b), Fla. Stat. (2015); Dep’t of Banking & Fin., Div. of Sec. & Inv’r Prot. v. Osborne Stern & Co., 670 So.2d 932, 933 (Fla.1996); Legal Envtl. Assistance Found., Inc. v. Clark, 668 So.2d 982, 987 (Fla.1996). If so supported, this court must affirm the final order unless there is a demonstration of a material error in procedure, an incorrect interpretation of law, or an abuse of discretion. §§ 120.68(7)(c)-(e), (8).
Analysis
A. The Construction Industry Licensing Board had jurisdiction to reconsider and vacate its prior final order.
Stasinos first argues that the Construction Industry Licensing Board lacked jurisdiction or authority to vacate or modify its prior final order. We disagree.
It is true that neither the Florida Administrative Procedure Act nor any rule of procedure provides for the filing of a motion for rehearing of final agency action. See § 120.68(1)-(2)(a); Sys. Mgmt. Assocs., Inc. v. Dep’t of Health & Rehab. Servs., 391 So.2d 688, 691 (Fla. 1st DCA 1980) (“Final agency action is reviewable only by appeal.”). However, “where the proceeding is in essence a judicial one,” an agency whose final orders are subject to review under the Florida Administrative Procedure Act “has the inherent or implied power to rehear or reopen a cause to reconsider the action taken therein.” Reich v. Dep’t of Health, 868 So.2d 1275, 1276 (Fla. 1st DCA 2004), (citing Smull v. Town of Jupiter, 854 So.2d 780, 782 (Fla. 4th DCA 2003)). “[T]his power must be exercised before an appeal from the original order has been filed or before such an order has become final by the lapse of time to file a timely notice of appeal.” Id. Here, the Guzzettas filed their request with the Department to vacate the prior final order on the same day they filed their timely notice of appeal from that order. The request indicates they had “previously discussed” the “reasons” for their request with the Department, Thereafter, upon the Guz-zettas’ and the Board’s agreed motion, this court relinquished jurisdiction to the Board for sixty days to reconsider the order. We conclude the request filed by the homeowners in this case satisfies the timeliness requirement.
Our conclusion on this point is supported by section 489.142 of the Recovery Act. This section of the Act provides in pertinent part that, “[w]ith respect to actions for recovery from the recovery fund, the board may intervene, enter an appearance, file an answer, defend the action, or take any action it deems appropriate and may take recourse through any appropriate method of review on behalf of the State *22 of Florida.” § 489.142(1), Fla. Stat. (2015) (emphasis added). The Board also has inherent authority, in its discretion, to reopen a proceeding where there has been a potential due process violation. See Filarski v. Reemployment Assistance Appeals Comm’n, 97 So.3d 278, 281 (Fla. 4th DCA 2012) (“[A]n administrative agency may vacate and re-enter its final orders ... where the agency has express authority to do so, or where there has been a due process violation.”). It was the potential due process question that impelled the Board to reconsider its prior final order in this case. For these reasons, we find no error in this action by the Board.
B. The Board properly determined that the homeowners’ claim for recovery from the fund was timely filed.
Stasinos next argues that, even if the Licensing Board had jurisdiction to reconsider and vacate the prior final order, the Guzzettas are barred from recovery because they did not file their recovery fund claim within a year of obtaining their circuit court judgment against the contractor. This argument lacks merit as well.
The Construction Industry Recovery Fund was created by the State Legislature in 1993, see Ch. 93-166, § 21, Laws of Fla. (codified as §§ 489.140-.142, Fla. Stat. (1993)), for the purpose of “provid[ing] reimbursement to individuals who, among other things, have recovered a judgment based on a construction contract, but have been unable to collect the judgment despite diligent efforts to do so.” Chappell v. Constr. Indus. Recovery Fund, 835 So.2d 339, 340 (Fla. 3d DCA 2003).[2]
To be eligible for an award from the Fund, a homeowner must satisfy several conditions. Section 489.141, “Conditions for recovery; eligibility,” states in relevant part:
(1) Any claimant is eligible to seek recovery from the recovery fund after having made a claim and exhausting the limits of any available bond, cash bond, surety, guarantee, warranty, letter of credit, or policy of insurance, provided that each of the following conditions is satisfied:
(a) The claimant has received final judgment in a court of competent jurisdiction in this state....
(b) The judgment ... is based upon a violation of s. 489.129(1)(g), (j) [abandoning a construction project], or (k) or s. 713.35.
(c) The violation was committed by a licensee.
(d) The judgment ... specifies the actual damages suffered as a consequence of such violation.
(e) The contract was executed and the violation occurred on or after July 1, 1993....
(f) A claim for recovery is made within 1 year after the conclusion of any civil, criminal, or administrative action or award in arbitration based on the act.
§ 489.141(1)(a)-(f), Fla. Stat. (2015) (emphasis added).
Here, the Guzzettas filed their restitution claim against the Recovery Fund within one year of the conclusion of And-over’s bankruptcy proceeding. At that point, there was no likelihood of recovery from the party with whom they contracted. However, their filing was more than three years after receiving stay relief in the Andover bankruptcy case and two years *23 after the final judgment rendered by the circuit court. Stasinos argues that the Guzzettas were delinquent in filing their claim against the Recovery Fund because the “action ... based on the Act” within the meaning of the eligibility provision of the Act, was the homeowners’ circuit court action against the contractor. We disagree.
The applicable law in this case indicates that claimants must exhaust all efforts to recover their damages in order to be eligible to seek a claim under the Recovery Fund. § 489.141(1) (e). The homeowners’ participation in the bankruptcy action was consistent with that purpose. Section 489.141(f) emphatically states the Recovery Fund claim must be made within one year after the conclusion of “any civil, criminal, or administrative action or award in arbitration based on the act.” Given the evident purpose of the Recovery Fund to serve as a source of last resort for recompense for qualifying claimants, we have no difficulty concluding that a bankruptcy claim for the purpose of recovering the homeowners’ loss is, broadly speaking, “a civil ... action” within the meaning and purpose of the law. See Black’s Law Dictionary (10th ed.2014) (civil adj. “Of, relating to, or involving private rights and remedies that are sought by action or suit, as distinct from criminal proceedings .... ”); (action “A civil or criminal judicial proceeding ... ‘defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.’”); see also In re Coram Healthcare Corp., 2007 WL 643325, at *1 (D.Del. Mar.1, 2007) (analogizing adversary proceedings in bankruptcy court to civil cases filed in the United States District Courts).
Any realistic interpretive assessment of what the legislature meant by an “action ... based on the act” should “ ‘rest[ ] on two sound principles: (1) that the body of the law should make sense, and (2) that it is the responsibility of the courts within the permissible meanings of the text, to make it so.’ ” Med. Ctr. of Palm Beaches v. USAA Cas. Ins. Co., 202 So.3d 88, 91, 2016 WL 4540251, at *3 (Fla. 4th DCA Aug. 31, 2016). Here, the Guzzettas’ claim against the contractor in the bankruptcy case was based on the contractor’s act of abandoning the homeowners’ construction project. It was not until the contractor’s bankruptcy case was discharged that the Guzzettas “exhaust[ed] the limits of any available” source of compensation from the contractor, including “any available bond, cash bond, surety guarantee, warranty, letter of credit or policy of insurance.” § 489.141(1). As such, the homeowners’ Recovery Fund claim, which was filed within a year of the discharge of the bankruptcy action, was timely.

Affirmed.

CONNER and KLINGENSMITH, JJ., concur.

. Pursuant to section 489.1195(1)(a), Florida Statutes (2015), qualifying agents for a business organization are jointly and equally responsible for supervision of all operations of the business organization, including field work and financial matters.

. The Recovery Fund is funded through a 1.5 percent surcharge of the permit fees associated with the enforcement of the Florida Building Code collected statewide. § 489.140, Fla. Stat. (2015).